UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


KAREN SANSOM,

        Plaintiff,

    v.                                      Case No. C-1-08-235

CINCINNATI BELL TELEPHONE,

        Defendant.


## ORDER

This matter is before the Court upon a motion for summary judgment and a motion to strike filed by defendant Cincinnati Bell Telephone (CBT) (docs. 34, 35). The parties have filed proposed findings of fact and conclusions of law, which the opposing side has highlighted as true, false or irrelevant (docs. 25, 33). Oral arguments on the motions were held on October 8, 2009.

### I. Introduction

Plaintiff Karen Sansom brings this action against defendant CBT, her former employer. She brings claims under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., and Ohio Rev. Code. § 4112.02(A). Plaintiff originally also brought a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., but she concedes that she cannot pursue that claim because she did not file a charge with the Equal Employment

1

Opportunity Commission. Jurisdiction is premised on 28 U.S.C. §§ 1331 and 1332. Plaintiff claims that defendant discriminated against her for her use of protected leave under the FMLA. Plaintiff further claims that she was a disabled employee and that her disability was a determining factor in defendant's decision to terminate her employment in violation of § 4112.02(A).

## II. Motion for Summary Judgment

Defendant moves for summary judgment on all claims against it. Defendant argues that (1) plaintiff's claim for FMLA retaliation must be dismissed because plaintiff was not eligible for FMLA leave at the time she was terminated as she had worked less than 1,000 hours in 2005 and in 2006; and (2) plaintiff cannot make out a prima facie case of disability discrimination because she is not "disabled" within the meaning of the anti-discrimination law as her depression is a short-term, temporary impairment and neither her depression nor her physical impairments substantially limited a major life activity (*see Bynum v. Fluor Fernald, Inc*., 2006 WL 508730, *10 (S.D. Ohio Mar. 1, 2006) (Weber, J.)); even if she did have a disability, defendant terminated her employment because she had three or more consecutive unexcused absences in violation of company policy; and defendant nonetheless accommodated plaintiff by granting her requested leaves of absence for her conditions in February and March, 2006.

Plaintiff contends that there are disputed questions of fact which preclude summary judgment on her disability discrimination claim, including whether she was disabled, whether defendant refused to accommodate her, and whether the decision to terminate her was pretextual. Plaintiff claims that she can recover for retaliation under the FMLA because she was eligible for, and took leave under, the FMLA prior to 2006. Plaintiff contends that because defendant makes

2

no arguments concerning the merits of her FMLA claim, she is entitled to proceed to trial on that claim.

## III. Undisputed Facts

1. CBT hired plaintiff on March 18, 1987. She received several promotions during her employment. From January 2001 until the date of her termination, plaintiff worked as a "Technical Clerk 3." Her main responsibility was to work at an inbound call center and troubleshoot problems for businesses and residences.

2. Plaintiff described her relationship with her supervisor, Mr. Wrobel, who supervised her from 2005 through the end of her employment, as "excellent."

3. From 1987 through 2005, CBT granted plaintiff a total of 641 days of excused absences as a result of various medical conditions.

4. In 2005 and 2006 alone, plaintiff was on leave of absence for approximately 187 days.

5. Plaintiff was hospitalized due to chest pain and was diagnosed with costochondritis and fibromyalgia in early February 2006. Plaintiff's primary care physician, Dr. Terry McDannold, and a heart specialist, Dr. Courtade, treated plaintiff for the condition.

6. Dr. McDannold certified that plaintiff needed a leave of absence from February 1, 2006 through February 20, 2006, for the conditions of costochondritis and fibromyalgia. CBT granted the leave request.

7. On February 14, 2006, while plaintiff was on leave, her daughter was the driver in a car accident in which the daughter's best friend was killed.

8. Plaintiff attended grief counseling sessions with her daughter starting February 17, 2006, in connection with her daughter's car accident. At the grief counseling sessions, the

counselor attempted to "gauge her [daughter's] emotions." Plaintiff attended a total a four sessions, though there were more sessions scheduled that she chose not to attend.

9. Plaintiff called Karen Smith in CBT's health services department on February 17, 2006, the business day before her leave for costochondritis was to expire, and asked for an extension of her leave. Smith indicated that plaintiff would need medical documentation to support the reasons for her leave.

10. Plaintiff contacted Dr. McDannold's office and was told that Dr. Burchell, his colleague, would extend the absence until February 27.

11. Plaintiff had requested and received leaves of absence prior to February 2006. She was familiar with CBT's leave request process and understood that it was her obligation to make sure that CBT had the requested documentation in order to extend her leave.

12. In addition to her physical problems, plaintiff had been receiving treatment for depression from Thor Tangvald, a psychiatrist, since September of 2004. On February 20, 2006, plaintiff sought help from him for her physical pain, grief and depression. Dr. Tangvold diagnosed her with depression, anxiety and panic. He certified that she needed leave until April 24, 2006.

13. Plaintiff had first seen Dr. Tangvald in September 2004 because she was "having a hard time dealing with her grandfather's death." At that time, she was on a leave of absence but had decided to come back to work early because she "usually do[es] better when [she is] busy."

14. On February 21, 2006, Theresa Greenwald, CBT's Manager of Health Services, sent plaintiff a letter by courier. She informed plaintiff that CBT had not received sufficient

documentation to support plaintiff's absence beginning February 20, 2006, and short-term disability payments had been discontinued effective that date. Greenwald instructed plaintiff to either contact her supervisor and return to work immediately or contact Greenwald if there was additional information plaintiff wished to discuss. Plaintiff spoke with Greenwald the following day and told her about the physical and emotional problems she was having.

15. On February 23, 2006, Dr. Tangvald submitted a certification to cover plaintiff's current and expected absence from February 20, 2006 through March 6, 2006. He indicated the absence was necessary due to several conditions, including plaintiff's history of major depression, decreased concentration, pain, anxiety, and panic disorder. He provided the diagnosis codes.

16. CBT determined that the additional leave plaintiff requested in February 2006 was to care for her stepdaughter and not because of a disability. Plaintiff, however, was not FMLA-eligible as she had worked only 824 hours from February 2005 through February 2006. CBT therefore denied the request for additional leave.

17. Plaintiff received a letter from CBT via courier on February 27, 2006, advising her that her request for short-term disability had been denied and she should contact her supervisor immediately. Plaintiff called Wrobel, who informed her that if she did not return to work, she would be fired for having three consecutive unexcused absences.

18. Despite Dr. Tangvald's certification that plaintiff could not work until March 6, 2006, because of her depression, anxiety, and pain, plaintiff returned to work on February 28 because she did not want to lose her job. She continued to work for approximately three

weeks until March 20, 2006.

19. Plaintiff was in pain and was unable to sleep because of the pain. She was very fatigued. Three or four times a day she had chest pain and felt like she was going to pass out. She could not catch her breath and would lay down in the break room. It was very difficult to do her job due to the pain and shortness of breath.

20. As plaintiff got ready for work on March 22, 2006, she was in severe pain and felt like she was going to pass out. She called 911 and was taken to the hospital. The symptoms were the result of her costochondritis. Plaintiff was again unable to work because of recurring symptoms of costochondritis.

21. On or about March 30, 2006, Dr. McDannold told plaintiff there was nothing more he could do for her and that she would have to live with the costochondritis. He certified plaintiff's absence to April 6, 2006. CBT granted plaintiff another leave of absence in accordance with Dr. McDannold's certification for the conditions of costochondritis and fibromyalgia.

22. Plaintiff sought to extend her leave of absence past April 6, 2006. She sought a second opinion regarding her costochondritis from Dr. Dawn McNaughton.

23. Plaintiff saw Dr. Tangvald on April 5, 2006. She discussed the depression, fatigue and stress she was under, both physically and mentally. She asked him to complete medical documentation in order to extend her leave of absence for depression. That same day, while plaintiff was at his office, Dr. Tangvald faxed to CBT paperwork which he had submitted to CBT in February 2006, which did not contain a statement regarding plaintiff's current status or a statement that she had received treatment for depression

since February 2006. He requested that plaintiff be off work until April 24, 2006, and indicated that plaintiff needed a continuing regimen of psychotherapy treatment. Plaintiff, however, saw Dr. Tangvald only one other time in April, which was on April 19.

24. CBT faxed Dr. Tangvald another request on April 12, 2006, asking him to provide his office notes to support the requested leave of absence for depression by April 13, 2006. CBT received a confirmation that the fax to Dr. Tangvald had been received by his office on April 12, 2006, at 12:18 p.m. Nevertheless, Dr. Tangvald did not submit his office notes to CBT.

25. As of April 18, 2006, CBT had not received the requested paperwork. On that date, at about 5:45 p.m., it delivered to plaintiff via courier a letter from Greenwald stating that her request for leave from April 6 through April 24, 2006, had been denied due to "non supporting or otherwise inadequate medical documentation." The letter further stated that her failure to return to work the next day "may result in adverse consequences." She was instructed to call Human Resources Manager Linda Nuss.

26. Plaintiff left two messages for Nuss that evening. In the second message, plaintiff, who was tired and worn-out, indicated that she had submitted the requested documentation on April 5, she did not know what else she could do, and she might have to resign or retire.

27. Plaintiff also left a message with Greenwald indicating that 13 days had passed since Dr. Tangvald had submitted his April 5 certification, she was not aware of any problem with the documentation, and she was physically and mentally unable to return to work the next day. She told Greenwald she would be seeing Dr. Tangvald the next day and he could fax whatever additional information Greenwald needed. Plaintiff told Greenwald that Dr.

Tangvald was still working on her medications, depression, medical conditions and suicidal thoughts. Plaintiff asked Greenwald to call her back.

28. Greenwald acknowledges that plaintiff left some information with her on the evening of April 18. Neither she nor Nuss responded to plaintiff's messages on April 18.

29. The following afternoon, Nuss returned plaintiff's phone call. Plaintiff told Nuss that she had an appointment with Dr. Tangvald later that day and asked Nuss to specify the additional information that was needed per Greenwald's April 18th letter. Nuss told plaintiff not to quit and that plaintiff needed to talk to Greenwald about the insufficient medical information.

30. Per Nuss' request, plaintiff called Greenwald that same day at approximately 2:55 p.m. She left a voicemail in which she told Greenwald that she had talked to Nuss, who had referred her back to Greenwald to find out the specific documentation that was needed. Plaintiff again stated that she had a doctor's appointment that day at 5:30 p.m. and if Greenwald would let her know what she needed, she would get it from Dr. Tangvald.

31. Plaintiff met with Dr. Tangvald later that same day. She was extremely upset. She did not know what else defendant wanted. Dr. Tangvald felt that by that time plaintiff's condition was "significantly worse."

32. During plaintiff's appointment with Dr. Tangvald on April 19, he told plaintiff that he had turned over everything to CBT except his office notes and plaintiff's chart. He further told plaintiff that he had contacted his lawyer about whether he should provide his office notes and said he was not sure if he could turn his notes over without violating HIPPA.

33. Plaintiff was unaware of the correspondence that had taken place between CBT and Dr.

Tangvald on April 12, 2006, and did not know that CBT had requested additional information from him.

34. On or about April 19, 2006, Dr. Tangvald sent a letter to Greenwald. He confirmed that plaintiff was unable to work and he provided diagnosis codes. He questioned defendant's conduct and request for additional information.

35. On April 21, 2006, Dr. Tangvald faxed a note to Greenwald and continued plaintiff's absence from April 5, 2006 until May 30, 2006. There is no evidence that Greenwald contacted plaintiff or Dr. Tangvald after receiving the April 21 fax.

36. By April 24, 2006, Greenwald had Dr. Tangvald's April 19, 2006 letter and his April 21, 2006 fax extending plaintiff's leave until May 30, 2006.

37. Plaintiff made no further contact with CBT and remained off work.

38. CBT still had not received Dr. Tangvald's office notes by April 26.

39. On April 26, 2006, Michelle Simpson, CBT's Director of Human Resources, informed plaintiff by telephone that the decision had been made on the previous day to terminate her employment effective April 6, 2006, due to insufficient documentation to grant her disability leave. According to Simpson, plaintiff was fired because she was absent three consecutive days, which Simpson equated to "job abandonment." After Simpson had terminated plaintiff, plaintiff explained that she had made attempts to find out what additional medical documents were needed, she told Simpson that Greenwald had never returned her calls, and she informed Simpson that her doctor had written a letter on April 19 explaining plaintiff's diagnosis, symptoms, and treatment. Simpson did not, however, reconsider the decision.

40. Although unpaid departmental leave was an option to avoid plaintiff's termination, Simpson did not speak with Wrobel about this option or about any option other than plaintiff's termination.

41. Plaintiff had been informed of CBT's attendance policy prior to the termination of her employment. Plaintiff further understood that if her request for leave was denied, any day missed would be considered an unexcused absence.

42. Plaintiff testified at her deposition that she either searched for employment or held other jobs through 2008.

43. Plaintiff testified that after her termination, she missed two weeks of work in June 2007 because of a flare-up of costochondritis, following which she was able to return to work.

### IV. Motion to Strike

CBT has filed a "motion to strike" in which it moves the Court to strike "the portions of the Opposition and Plaintiff's declaration that require a medical opinion." Fed. R. Civ. P. 12(f), which governs a motion to strike, authorizes the Court to strike only "any redundant, immaterial, impertinent, or scandalous matter" from a pleading and does not authorize the Court to strike from the record affidavits or statements made in a brief. *See Bovee v. Coopers & Lybrand,* 216 F.R.D. 596, 599 (S.D. Ohio 2003) (Sargus, J.) (quoting Wright & Miller, Fed. Prac. & Proc., § 1380) (footnote omitted) (Rule 12(f) "is neither an authorized nor a proper way . . . to strike affidavits.")

Although the court may not strike an affidavit under Rule 12(f), it may exclude from consideration an affidavit that it deems improper. *Id*. at 599-600 (citing ***Lombard v. MCI Telecomm. Corp***., 13 F.Supp.2d 621, 625 (N.D. Ohio 1998)). An affidavit is not improper under

Fed. R. Civ. P. 56(e) if it is made on personal knowledge, sets forth such facts as would be admissible in evidence, and affirmatively shows that the affiant is competent to testify to the matters stated therein.

Accordingly, while striking plaintiff's declaration is not appropriate, the Court may decline to consider those portions it finds improper. The Court finds that certain portions of the declaration are improper because plaintiff makes statements regarding medical matters as to which she is not competent to testify. Specifically, plaintiff is not competent to testify that costochondritis is a chronic condition with no cure; that when she has active costochondritis her "lungs cannot expand due to the swelling of the muscles around [her] ribs" and full recovery takes months; that doctors treating her for costochondritis must rule out a heart attack; that fibromyalgia is a chronic condition that involves inflammation of muscles and joints throughout her body; and the symptoms of costochondritis mimic those of a heart attack. Because plaintiff herself is not competent to provide medical testimony to this effect, and the Court therefore will not consider the portions of plaintiff's declaration or testimony which address these particular medical matters.

## V. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing

11

that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

## VI. Applicable Law

### A. The FMLA

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines the term "serious health condition" to mean "an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). An employer is prohibited from retaliating against an

employee who has used FMLA leave, such as by discharging the employee because she has taken FMLA leave. *See Daugherty v. Sajar Plastics, Inc*., 544 F.3d 696, 707 (6th Cir. 2008) (citing *Arban v. West Pub. Corp.*, 345 F.3d 390, 403 (6th Cir. 2003)).

An FMLA retaliation claim based solely upon circumstantial evidence is evaluated under the *McDonnell Douglas* burden-shifting framework. *Id*. (citing *Bryson v. Regis Corp*., 498 F.3d 561, 570 (6th Cir. 2007)). A plaintiff may establish a prima facie case by showing that (1) she engaged in statutorily-protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *Id*.

**B. Disability Discrimination**

Ohio Rev. Code § 4112.02(A) makes it an unlawful discriminatory practice "[f]or any employer, because of the . . . disability . . . of any person, to . . . discharge without just cause . . . or otherwise to discriminate against that person with respect to . . . any matter directly or indirectly related to employment." In order to state a claim of disability discrimination, the plaintiff must demonstrate "(1) that she is a disabled person within the meaning of the [statute], (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment decision because of her disability." *McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 371 (6th Cir. 1997).[1]

Not every impairment qualifies as a disability protected by the anti-discrimination laws.

---

[1] Although plaintiff is not pursuing her ADA claim, the law applicable to that claim is relevant because the analysis of a claim under the ADA and § 4112.02 is the same, *see Kleiber v. Honda of America Mfg., Inc.,* 485 F.3d 862, 872 (6th Cir. 2007), and the case law regarding claims brought under the ADA is generally applicable to claims brought under the Ohio statute. *See Wooten v. City of Columbus*, 91 Ohio App.3d 326, 334, 632 N.E.2d 605, 610 (1993). The ADA Amendments Act of 2008, which took effect on January 1, 2009, Pub.L. No. 110-325, 122 Stat. 3553, is not relevant to plaintiff's claim, however, because the Act does not apply retroactively. *See Milholland v. Sumner County Bd. or Educ*., 569 F.3d 562, 565 (6th Cir. 2008).

*Daugherty*, 544 F.3d at 703 (citing *Toyota Mfg., Ky., Inc. v. Wms.,* 534 U.S. 184, 195 (2002)).

In determining whether an individual is disabled, an individualized inquiry must be made. *Cotter v. Ajilon Servs., Inc.,* 287 F.3d 593, 598 (6th Cir. 2002) (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483 (1999)). Ohio Rev. Code § 4112.01(A)(13) defines a disability as

> a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.

The term "substantially limits" is defined under the regulations governing the ADA to mean,

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

The regulations governing the ADA define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The regulations set forth the following factors to be considered in determining whether an individual is "substantially limited" in a major life activity:

> (i) The nature and severity of the [claimant's] impairment;
> (ii) The duration or expected duration of the impairment; and
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

Under the law applicable at the time of plaintiff's termination, any impairment that only

moderately or intermittently prevented an individual from performing major life activities was not a substantial limitation under the ADA. *Mahon v. Crowell,* 295 F.3d 585, 590-91 (6th Cir. 2002) (citing *Williams*, 534 U.S. at 197).

To establish that an impairment substantially limits the ability to engage in the major life activity of working, the plaintiff must show that she is "significantly restricted in [the] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills and abilities." *McKay,* 110 F.3d at 371 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). The "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id*.

An employer discriminates against a qualified individual on the basis of a disability when it does not make "reasonable accommodations to the known physical or mental limitations" of the individual unless the employer can "demonstrate that the accommodation would impose an undue hardship on the operation" of its business. 42 U.S.C. § 12112(b)(5)(A). The plaintiff has the initial burden of proposing an accommodation and showing that it is objectively reasonable. *Monette v. Electronic Data Systems Corp*., 90 F.3d 1173, 1183 (6th Cir. 1996). The burden of showing undue hardship is upon the employer. *Id*.; *Wooten*, 91 Ohio App.3d at 334, 632 N.E.2d at 610. The term "reasonable accommodation" may include "job restructuring [or] part-time or modified work schedules . . ." 42 U.S.C. § 12111(9). A medical leave of absence can constitute a reasonable accommodation under appropriate circumstances. *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.,* 155 F.3d 775, 783 (6th Cir. 1998).

A disabled employee's request for an accommodation triggers an employer's duty to participate in an interactive process to attempt to find an accommodation. *See DeCesare v. Niles*

*City School Dist. Bd. of Educ*., 154 Ohio App.3d 644, 650, 798 N.E.2d 655, 660 (Ohio App. 11 Dist. 2003). "'To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.'" *Id*. (citing **Shaver v. Wolske & Blue**, 138 Ohio App.3d 653, 664, 742 N.E.2d 164 (Ohio App. 10 Dist. 2000) (quoting **Taylor v. Phoenixville School Dist**., 184 F.3d 296, 319-320 (3rd Cir. 1999)).

An employer need not accept an employee's word that the employee has an illness that may require accommodation and the employer instead may attempt to confirm or disprove the employee's representation, such as by requiring that the employee provide medical documentation sufficient to prove that he has a condition that needs accommodation or by requiring that the employee undergo a medical exam. **Kennedy v. Superior Printing Co.,** 215 F.3d 650, 656 (6th Cir. 2000) (citing **E.E.O.C. v. Prevo's Family Market, Inc**., 135 F.3d 1089, 1094-95 (6th Cir. 1998); 29 C.F.R. pt. 1630, App. § 1630.14(c)).

## VI. Resolution

### A. FMLA Claim

Plaintiff cannot proceed on her FMLA claim because she has not come forward with any evidence to establish a causal connection between her FMLA leave in 2005, when she was an FMLA-eligible employee, and her termination in 2006. Plaintiff's counsel clarified at oral argument that plaintiff last took FMLA leave in early 2005. The lapse of time between plaintiff's FMLA leave in early 2005 and her eventual termination is insufficient, standing alone, to give

rise to an inference of a causal connection. *See Mickey v. Zeidler Tool and Die Co*., 516 F.3d 516, 525 (6th Cir. 2008) ("[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.") Plaintiff offers no other evidence to suggest that her termination had any connection whatsoever to FMLA leave she had taken in the past. Plaintiff has therefore failed to carry her burden to set forth specific facts showing that there is a genuine issue for trial on her FMLA claim. Accordingly, defendant is entitled to summary judgment on the FMLA claim.

**B. Disability Discrimination Claim**

Plaintiff has failed to show that there is a genuine issue of material fact as to whether she is substantially limited in the major life activities of breathing and sleeping as a result of costochondritis and/or fibromyalgia. According to plaintiff's declaration, her episodes of costochondritis are few and far between in that she had active episodes twice in 2006; once during 2007, over a year after the second 2006 attack; and once in 2009, nearly two years after the 2007 episode. There is no competent evidence that plaintiff has difficulty with her breathing for prolonged periods of time as a result of a flare-up. Her intermittent episodes of costochondritis are therefore insufficient to demonstrate that she is substantially limited in the major life activity of breathing.

Plaintiff has likewise failed to show that she is substantially limited in the major life activity of sleeping. She has offered no medical evidence to show that costochondritis and fibromyalgia substantially limit her ability to sleep. Nor has plaintiff provided any testimony regarding how or to what extent her sleep is interrupted. Plaintiff's vague assertions that her impairments affect her ability to sleep, accepted as true, fall far short of establishing that she is disabled within the meaning of the anti-discrimination laws.

In addition, plaintiff appears to imply that she is in constant pain by asserting that "[w]orking in constant pain may permit a jury to find 'substantial limitation' of major life activities." In support of this contention, plaintiff cites ***Rousch v. Weastec, Inc.,*** 96 F.3d 840, 844 (6th Cir. 1996), where the court found that there was an issue of material fact as to whether the plaintiff's bladder condition substantially limited her working. The plaintiff in ***Rousch*** testified during her deposition that her condition caused her substantial pain such that she could not engage in the major life activity of work without medication; she claimed that she suffered pain even with medication; and her doctor testified that she visited his office monthly or semi-monthly for the treatment of infection and pain caused by her condition. At least one Ohio appellate court has distinguished ***Rousch*** on the ground that the issue there was whether the plaintiff's impairment and the pain it caused substantially limited working, which is a major life activity, whereas simply living with pain is not a major life activity under Ohio's anti-discrimination statute, Ohio Rev. Code § 4112.01(a)(13). ***See Pflanz v. Cincinnati***, 149 Ohio App.3d 743, 755-56, 778 N.E.2d 1073 (Ohio App. 1 Dist. 2002).

Insofar as plaintiff is alleging that she suffers from constant pain that substantially limits working or some other unspecified major life activity, she has failed to present any medical

18

evidence to demonstrate that she suffers constant pain, she has not indicated the severity of the pain from which she allegedly suffers on a constant basis, and she has not offered any evidence to show how the constant pain is substantially limiting. Her general allusions to pain caused by costochondritis and fibromyalgia, without any reference to medical records or other documentation by treating physicians, are insufficient to carry her burden in this regard.

Plaintiff nonetheless can proceed on her disability discrimination claim because she has shown that there are genuine issues of material fact as to whether she suffered from a mental disability that substantially limited a major life activity. There is no question that depression and anxiety can constitute disabilities within the meaning of the Ohio anti-discrimination statute, and there is medical evidence in the record to support a finding that plaintiff suffered from these impairments. Whether depression and anxiety substantially limited plaintiff in a major life activity is a question that cannot be resolved without weighing the evidence and determining factual issues presented by the record. These issues include whether plaintiff's mental impairments were ongoing, the course of treatment she received, and the extent to which depression and anxiety impaired her ability to function. It is for the jury to weigh the evidence, resolve these issues, and determine whether plaintiff was disabled within the meaning of the Ohio anti-discrimination statute.

There is also an issue of fact as to whether defendant refused to provide a reasonable

accommodation to plaintiff. Plaintiff alleges that her requests to extend her leave from April 6, 2006 to April 24, 2006 and then again to May 30, 2006 were requests for a reasonable accommodation. Although plaintiff had taken a considerable amount of time off of work in the months and years preceding April of 2006, the record does not definitively establish that plaintiff's requests were unreasonable under the circumstances. Defendant does not claim that accommodating plaintiff would have imposed an undue hardship on its business. Moreover, there are questions as to whether defendant made a good faith effort to interact with plaintiff and attempt to accommodate her or whether defendant unreasonably neglected to communicate with plaintiff. Thus, the Court is precluded from finding on summary judgment that plaintiff's requests that her leave be extended were unreasonable.

Finally, defendant claims that it terminated plaintiff not because of her disability but because she had three unexcused absences. Whether defendant terminated plaintiff because she failed to comply with its policies or whether it denied plaintiff a reasonable accommodation for a disability and then terminated her because she was unable to continue to work without that accommodation are matters for the jury to decide.

## VII. Conclusion

In accordance with the foregoing, defendant's motion for summary judgment (doc. 34) and motion to strike (doc. 35) are **DENIED**. This case shall proceed to trial in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

        S/ Herman J. Weber
        HERMAN J. WEBER, SENIOR JUDGE
        UNITED STATES DISTRICT COURT